# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

TRINITY PRINT & MEDIA, INC., a Florida
corporation, VIBEY.COM, LLC, a Florida
limited liability company, and TURTLE MEDIA
GROUP, LLC, a Florida limited liability company,

Plaintiffs,

vs.

ROMAN ROMANYUK, an adult individual,
MIRZA POLOVINA, an adult individual, and
RUCKUS VENTURES LLC, a Washington limited
liability company, and PREZNA LLC, a Washington
limited liability company,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case Number: _____

JURY TRIAL DEMANDED
INJUNCTIVE RELIEF
REQUESTED

## VERIFIED COMPLAINT

Plaintiffs Trinity Print & Media, Inc., a Florida corporation ("Trinity"), Vibey.com, LLC, a Florida limited liability company ("Vibey"), and Turtle Media Group, LLC, a Florida limited liability company ("Turtle Media") (collectively, the "Companies" or "Plaintiffs"), by and through their undersigned counsel, hereby bring this Verified Complaint for injunctive and other relief against Defendants Roman Romanyuk ("Romanyuk"), Mirza Polovina, Ruckus Ventures LLC ("Ruckus"), a Washington limited liability company, and Prezna LLC, a Washington limited liability company (collectively "Defendants"), alleging as follows:

## NATURE OF THE ACTION

1. This action arises from Defendants' flagrant violation of post-closing restrictive covenants made in connection with Defendants' sale of their interests in Vibey and Turtle Media, two companies that operate digital media platforms. To induce Trinity to purchase their interests

in the companies, Defendants covenanted not to use the companies' media content or solicit or otherwise work with the companies' media buyers.   After the transaction closed, and up to the present, however, Defendants have continued using the very same media content and working with the very same media buyers to grow their competing business.  By Defendants' material breach of the restrictive covenants and related unlawful conduct, Defendants have caused and are causing the Companies irreparable harm and substantial financial losses.

## PARTIES

2.      Plaintiff Trinity is a Florida Corporation with its principal place of business at 1001 West Cleveland Street, Tampa, FL 33606.

3.      Plaintiff Vibey is a Florida limited liability company with its principal place of business at 1001 West Cleveland Street, Tampa, FL 33606.  Vibey's sole member is Trinity making it a citizen of Florida.

4.      Plaintiff Turtle Media is a Florida limited liability company with its principal place of business at 1001 West Cleveland Street, Tampa, FL 33606.  Turtle Media's sole member is Trinity making it a citizen of Florida.

5.      Defendant Romanyuk is an adult individual residing and domiciled in the state of Washington.

6.      Defendant Mirza Polovina is an adult individual residing and domiciled in the state of Washington.

7.      Defendants Ruckus is a Washington limited liability company.  Ruckus's sole member is Romanyuk, which makes Ruckus a citizen of Washington.

8.      Defendant Prezna is a Washington limited liability company.  Prezna's sole members are Romanyuk and Polovina, which make Prezna a citizen of Washington.

## JURISIDICTION AND VENUE

9.      This Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

10.     This Court also  has diversity jurisdiction under 28 U.S.C. § 1332(a) because Plaintiffs are all citizens of Florida, Defendants are all citizens of Washington, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs pursuant to 28 U.S.C. § 1332(a).

11.     This Court has personal jurisdiction over the individual Defendants and venue is proper under the parties' written agreements to bring all actions in the federal and state courts of Hillsborough County, Florida.  *See* Exhibit 1 at ¶ 35 and Exhibit E thereto (Non-Solicitation and Confidentiality Agreement) at ¶ 13; Exhibit 2 at ¶ 35 and Exhibit E thereto (Non-Solicitation and Confidentiality Agreement) at ¶ 13.

12.     This Court has personal jurisdiction over Ruckus and Prezna under Fla. Stat. 48.193 because they committed tortious acts within Florida, including but not limited to tortious interference with Plaintiffs' contracts and misappropriation of Plaintiffs' trade secrets, which harmed Plaintiffs in Florida as Florida citizens.  Ruckus and Prezna are also subject to personal jurisdiction in this Court because they have engaged in substantial and not isolated contacts in Florida in purposefully directing business activities in the State, by, among other things, targeting and advertising to individuals located in Florida.

## FACTS

### Trinity's Purchase of the Companies From Defendants

13.     On or about September 23, 2022, Trinity executed two LLC Membership Unit Sale and Purchase Agreements (collectively, the "Agreements") by which Trinity purchased from

Romanyuk and Mirza Polovina all of the issued and outstanding membership units in Vibey and Turtle Media.

14.     Vibey and Turtle Media provide news and entertainment content on the worldwide web designed to generate advertising revenue through display advertising.

15.     Vibey owns and operates the website http://worldlifestyle.com ("WorldLifestyle"), and related social media accounts.

16.     Turtle Media owns and operates the website http://Lifebuzz.com ("LifeBuzz"), and related social media accounts.

17.     Under one Agreement (the "Vibey Agreement"), Trinity purchased from Romanyuk all of the issued and outstanding membership units in Vibey for the sum of Two Million Nine Hundred Fifty Thousand Dollars ($2,950,000.00).  A true and correct copy of the Vibey Agreement is attached hereto as Exhibit 1.

18.     Under the other Agreement (the "Turtle Media Agreement"), Trinity purchased from Romanyuk and Polovina all of the issued and outstanding membership units in Turtle Media for the sum of Fifty Thousand Dollars ($50,000.00).  A true and correct copy of the Turtle Media Agreement is attached hereto as Exhibit 2.

19.     Under the Agreements, Trinity became the owner of Vibey and Turtle Media and all of their media content, intellectual property, and trade secrets associated with their websites and social media accounts, along with Vibey's established relationships with advertisers and advertising platforms.  *See* Exhibit 1, Vibey Agreement, Exhibit A "Assets;" Exhibit 2, Turtle Media Agreements, Exhibit A "Assets."

20.     Under the Agreements, Trinity also acquired Vibey's and Turtle Media's contractual relationships with experienced and knowledgeable media buyers who develop the

Companies' native advertising campaigns and strategies. Many of the media buyers work overseas.

21.     So that people will visit the WorldLifestyle and LifeBuzz websites, the Companies' media buyers drive traffic to the websites by placing the Companies' content on other websites through native advertising platforms like Taboola and Outbrain.

22.     The Companies have expended substantial time and resources to test, develop, and analyze native advertising campaigns and the profit metrics with each to maximize revenue. Given the independent economic value of the information, the Companies treat the related analytics and data generated through these activities as confidential and competitively sensitive information of the Companies and closely guard against the unauthorized use and disclosure of the information. As such, the information constitutes the Companies' trade secrets.

## The Covenants

23.     To induce Trinity to enter into the transactions, Romanyuk agreed to multiple restrictive covenants in the Agreements (collectively, the "Covenants"). The Covenants were material inducements for Trinity to enter into the Agreements and Trinity would not have entered the Agreements or paid the consideration it did if not for the Covenants.

24.     With both Agreements, Romanyuk agreed to refrain from, directly or indirectly, working with the independent contractors engaged by the Companies, including but not limited to the media buyers identified in Exhibit A to Exhibit E (the "Contractor Covenant"):

> 6. **Non-Solicitation.** During the Term, the Covenanter shall not directly or indirectly, for the Covenanter or any third party, solicit, induce, recruit, or hire anyone (i) in the employ of the Company to terminate any such employee's employment with the Company for the purpose of joining, associating, or becoming employed with or by any person, sole proprietorship, corporation, partnership, limited liability company, or other entity which is engaged in the same or a similar business in which the Company is engaged, (ii) listed on Exhibit A attached hereto for the purpose of joining, associating, or becoming employed with or by any

person, sole proprietorship, corporation, partnership, limited liability company, or other entity which is engaged in the same or a similar business in which the Company is engaged, or (iii) who is a contractor with the Company or copywriter for the Company for the purpose of joining, associating, or becoming employed with or by any person, sole proprietorship, corporation, partnership, limited liability company, or other entity which is engaged in the same or a similar business in which the Company is engaged.

*See* Exhibit 1, Vibey Agreement at Exhibit E, ¶ 6 and Exhibit A thereto; Exhibit 2, Turtle Media Agreement at Exhibit E, ¶ 6.

25.     The Term of the Contractor Covenant is three (3) years: "The term of this Agreement ("Term") shall commence on the Effective Date and shall terminate on the third (3rd) anniversary of the Effective Date . . . ." *See* Exhibit 1, Vibey Agreement at Exhibit E, ¶ 2; Exhibit 2, Turtle Media Agreement at Exhibit E, ¶ 2.

26.     With both Agreements, Romanyuk agreed further not to use the Companies' content or intellectual property, or any derivation thereof, for one (1) year (the "Content Covenant"):

> **Seller, for himself or any third party, shall not use any of the content, or any derivations thereof, or intellectual property, or any derivations thereof, for any purpose whatsoever other than the purpose of protecting his rights under this Agreement for one (1) year immediately following the effective date.**

*See* Exhibit 1, Vibey Agreement at Exhibit A (emphasis in original); Exhibit 2, Turtle Media Agreement at Exhibit A (emphasis in original).

27.     As the Agreements are effective as of September 23, 2022, Defendants were required to honor the Content Covenant through September 22, 2023 and were required to honor the Contractor Covenant through September 23, 2025. *See* Exhibits 1 and 2.

28.     With both Agreements, the parties agreed that the Companies would be entitled to injunctive and other equitable relief in the event of any threatened violation or violation of the Covenants:

8. **Equitable Relief.**   The parties acknowledge and agree that the rights being protected by this Agreement are of a special, unique, unusual, and extraordinary character, which gives them a particular value, and that the breach of any provisions of this Agreement shall cause irreparable injury and damages to the Company. In such event, the Company shall be entitled to require specific performance of all of the acts and the undertakings required of the Covenanter hereunder and to obtain injunctive and other equitable relief in any court of competent jurisdiction to prevent the violation or threatened violation of any of the provisions of this Agreement. Neither this provision nor any exercise by the Company of its right to equitable relief or specific performance herein granted shall constitute a waiver by the Company of any other rights which it may have to damages or other relief. The parties hereby agree that the Company shall be required to post any security or bond in connection with any relief it seeks.

*See* Exhibit 1, Vibey Agreement at Exhibit E, ¶ 8; Exhibit 2, Turtle Media Agreement at Exhibit E, ¶ 8.

29.     Consistent with the above, the Covenants were justified and necessary to protect the Companies' vital and legitimate business interests in maintaining unimpeded use of the Companies' distinctive media content, as well as their experienced media buyers, so the Companies could sustain their competitive advantage and goodwill in the marketplace with internet users and advertisers and generate the same level of historical revenue and profits.

30.     In paragraph 11 of Exhibit E to the Agreements, the parties agreed that in any action to enforce the Covenants, the prevailing party would be entitled to its reasonable attorneys' fees and other costs of litigation:

11. <u>Attorney Fees</u>.   Should any of the parties hereto default in any of its covenants or obligations herein provided and should any other party hereto commence legal or equitable action, the prevailing party shall be awarded all costs of said litigation, including reasonable attorney fees.

*See* Exhibit 1, Vibey Agreement at Exhibit E, ¶ 11; Exhibit 2, Turtle Media Agreement at Exhibit E, ¶ 11.

**Defendants' Financial Representations**

31.     Prior to closing, on August 25, 2022, Romanyuk provided Trinity with a spreadsheet and financials regarding the revenue and profits generated by the Companies for the past two and half years.

32.     As a result of Defendants' financial representations, Trinity was led to believe that the Companies' fourth quarter 2022 earnings would be similar to those generated previously because Trinity was purchasing the Companies along with their same media content, same ad stack, and same media buyers.

33.     However, after the transaction closed, the Companies' fourth quarter 2022 revenue and profits were only a fraction of the amounts represented by Defendants:

|  | 4th Qtr 2020 | 4th Qtr 2021 | 4th Qtr 2022 |
|---|---|---|---|
| Revenue | $4,846,162.18 | $6,521,974.05 | $2,582,437.63 |
| Profit | $404,405.42 | $783,111.68 | ($107,007.44) |

**Defendants' Breach of and Interference With the Covenants**

34.     In mid-January 2023, the Companies began investigating why the Companies' fourth quarter 2022 revenue and profits were so much less than the amounts represented by Defendants.  The Companies were stunned to learn that Defendants have been ussing the Companies' media content, media buyers, and trade secrets to direct traffic to their competing website, https://funnyand.com ("Funnyand"), and thereby generate revenue for themselves in violation of the Covenants.  Since execution of the Agreements, and notwithstanding the plain language of the Contracts, it is as if the Companies have been in direct competition with themselves.

35.     In violation of the Contractor Covenant, Defendants are simultaneously working with the Companies' media buyers to compete with the Companies.

36.     Specifically, Defendants are working with two of the Companies' key media buyers, Mahir Polovina and Paritosh Singh, as evidenced by their LinkedIn profiles, which identify them as employees of Defendants' company, Prezna.  True and correct copies of the LinkedIn pages identifying Mahir Polovina and Paritosh Singh as employees of Prezna are attached hereto as Exhibits 3 and 4, respectively.

37.     Defendants' use of the Companies' media buyers is further evidenced by the fact that the URL medium for several of Defendants' articles on their Funnyand website identifies the media buyer as "preznataboola," which is the same URL medium for the Companies' media buyers.

38.      The URL medium acts as a signature in identifying the media buyer who placed the article.  A true and correct copy of an example of one of Defendants' articles identifying the media buyer as "preznataboola" is attached hereto as Exhibit 5.

39.     In addition, although never disclosed by Defendants, Trinity has come to learn that Defendant Mirza Polovina is related to the Companies' media buyer, Mahir Polovina, and Defendant Roman Romanyuk is related to the Companies' media buyer, Oksana Romanyuk.

40.     Romanyuk and Mirza Polovina concealed that they were related to two of the media buyers by omitting the media buyers' last names from the list of media buyers at Exhibit A to Exhibit E of the Agreements.  *See* Exhibit 1, Vibey Agreement at Exhibit E, ¶ 6 and Exhibit A thereto.

41.     In violation of the Content Covenant, Defendants have used the Companies' media content and trade secrets on at least fourteen (14) occasions in publishing articles with identical, or nearly identical, titles, content, and images to direct traffic to their Funnyand website and generate revenue for themselves in direct competition with the Companies.  Attached hereto as

Exhibit 6 is a chart and copies of Defendants' unlawful articles along with the Companies' articles they were copied from in violation of the Content Covenants.

42.     As shown in Exhibit 6, Defendants published at least three (3) articles that copy almost verbatim the titles, content, and images of the Companies articles, "Army Dad Snaps Pic After Spotting What's In Shopper's Grocery Cart," "New Car Smells Strange So Dad Check Trunk," and "Navy SEAL Sick of Porch Pirates Builds The Perfect Trap." *See* Exhibit 6 at #1-3.

43.     Defendants also published at least eleven (11) articles that were directly derived from the Companies' articles with substantially similar titles, content, and images as the Companies' articles, "Man's Alone Time With Kids Is Recorded By Mom On Hidden Cam," "Pregnant Dog Acts Weird Vet Sees Ultrasounds and Instantly Pulls Out Phone," "Boy Mocked In School Because Of His Weight, Gets The Last Laugh," "Son Vanishes After School, 31 Years Later They Find Him In A KFC In Connecticut," Woman Leaves House To Neighbor, He Drops To His Knees When He Looks Inside," "Ex-Police Dog Keeps Barking At Tree, Dad Finds A Lot More Than Wood Inside," "Dog Goes Somewhere Daily So Owner Secretly Follows Him," "Mom Gives Birth To Triplets 10 Weeks Early, Learns They Are One In A Million," "Man Learns Adopted Puppy Isn't A Dog," and Teacher Won't Let Girl Eat Poor Lunch, Regrets It" and "Identical Twins Marry Twins Ignoring Doctor's Warning." *See* Exhibit 6 at # 4-14.

44.     By use of this media content, it is also apparent that Defendants are using the Companies' trade secrets because that Defendants are stealing was known by Defendants to be among the Companies' highest performing content.

45.     Defendants' diversion of the Companies' media buyers to work on Defendants' competing media campaigns has caused substantial losses in revenue and business opportunities

to the Companies and has otherwise harmed the Companies' contractual relationships with its media buyers.

46.     Defendants' use of the Companies' media content erodes the Companies' goodwill with internet users and advertisers by diluting the Companies' distinctive media offerings with copycat articles.

47.     In all events, it is apparent that Defendants are ignoring the Covenants, using the same people, and using the same intellectual property to compete with and injure the Companies.

48.     In order to survive, the Companies need Defendants to honor the Covenants they made.  Defendants' use of the Companies' media buyers, media content, and trade secrets has inflicted immediate, irreparable harm to the Companies' vital business interests, loss of goodwill with advertisers, loss of revenue, as well as harm to the Companies' business and contractual relationships with their media buyers and advertising platforms.

**<u>Defendants' False and Fraudulent Misrepresentations</u>**

49.     In inducing Trinity to enter into the Agreements, Defendants falsely represented that Romanyuk would not use the Companies' media buyers for a period of three (3) years and would not use the Companies' media content for a period of one (1) year.

50.     Defendants also fraudulently omitted from Trinity the fact that Defendants Romanyuk and Mirza Polovina are close relatives of two of the Companies' key media buyers, Mahir Polovina and Oksana Romanyuk, by omitting the media buyers' last names from the list of media buyers at Exhibit A to Exhibit E of the Agreements.  *See* Exhibit 1, Vibey Agreement at Exhibit E.

51.     These material representations and omissions by Defendants were materially false and intentionally false at the time when made, as confirmed by Defendants' actions in using the

11

Companies' media buyers and media content in growing their competing websites immediately after closing.

52.     Had Trinity known that Defendants' representations and omissions were false and fraudulent, Trinity never would have executed the Agreements or paid Defendants Three Million Dollars ($3,000,000.00).

53.     All conditions precedent to maintenance of this action have been performed, have occurred, or have been waived

**COUNT I**
**BREACH OF CONTRACT AS TO CONTRACTOR COVENANT**
(***Plaintiffs v. Romanyuk***)

54.     The Companies repeat and reallege the allegations contained in paragraphs 1 – 48 as if set forth at length herein.

55.     The Agreements are contracts between the parties that set forth each party's rights and responsibilities to each other.

56.     In the Agreements, Romanyuk agreed he would not, directly or indirectly, solicit the Companies' media buyers for a period of three (3) years from the effective date of the Agreements.  *See* Exhibit 1, Vibey Agreement, at Exhibit E, ¶ 6; Exhibit 2, Turtle Media Agreement, at Exhibit E, ¶ 6.

57.     Specifically, Romanyuk promised he would not, "directly or indirectly, . . . solicit, induce, recruit, or hire anyone . . . listed on Exhibit A [to Exhibit E of the Agreements] . . . for the purpose of joining, associating, or becoming employed with or by any person, sole proprietorship, corporation, partnership, limited liability company, or other entity which is engaged in the same or similar business in which Company is engaged, or . . . who is a contractor with the Company or copywriter for the Company for the purpose of joining, associating, or becoming employed with

or by any person, sole proprietorship, corporation, partnership, limited liability company, or other entity which is engaged in the same or a similar business in which the Company is engaged."  *See* Exhibit 1, Vibey Agreement, at Exhibit E, ¶ 6; Exhibit 2, Turtle Media Agreement, at Exhibit E, ¶ 6.

58.     Thereafter, Romanyuk, with the assistance and participation of the other Defendants, solicited the Companies' media buyers listed in Exhibit A to Exhibit E.  *See* Exhibits 3-5.

59.     Said conduct by Romanyuk breached the Contractor Covenant in the Agreements.

60.     As a direct and proximate result of Romanyuk's breach of the parties' Agreements, Romanyuk has caused, and will continue to cause, the Companies to suffer damages and irreparable injury, which Defendants acknowledged would result upon breach of the Agreements. *See* Exhibit 1, Vibey Agreement, at Exhibit E, ¶ 8; Exhibit 2, Turtle Media Agreement, at Exhibit E, ¶ 8.

WHEREFORE, the Companies respectfully request that the Court enter judgment in favor of the Companies and against Romanyuk and award to the Companies:

a.     Monetary damages, including but not limited to compensatory or actual damages, in an amount exceeding $75,000.00 and to be determined at time of trial;

b.     Pre and post-judgment interest;

c.     Reasonable attorneys' fees and costs;

d.     Equitable relief including a preliminary and/or permanent injunction prohibiting Romanyuk from, directly or indirectly, working with the Companies' media buyers and other independent contractors, or otherwise engaging in conduct that violates the Contractor Covenant in the Agreements; and

e.       Such other and further relief as this Court deems just and appropriate.

## COUNT II
## BREACH OF CONTRACT AS TO CONTENT COVENANT
### (*Plaintiffs v. Romanyuk*)

61.      The Companies repeat and reallege the allegations contained in paragraphs 1 – 48 as if set forth at length herein.

62.      The Agreements are valid and binding written contracts between the parties that set forth each party's rights and responsibilities to each other.  *See* Exhibit 1 and Exhibits 2.

63.      In the Agreements, Defendant Romanyuk promised that he would not use the Companies' media content, or derivations thereof, for a period of one (1) year from the effective date of the Agreements.  *See* Exhibit 1, Vibey Agreement, at Exhibit A; Exhibit 2, Turtle Media Agreement, at Exhibit A.

64.      These promises were material to the Companies in entering the Agreements.

65.      Thereafter, Romanyuk, with assistance and participation from the other Defendants, used the Companies' media content, and derivations thereof, on at least fourteen occassions in connection with their competing website, Funnyand.  *See* Exhibit 6.

66.      Said conduct materially breached the Content Covenant in Exhibit A to the Agreements.

67.      As a direct and proximate result of Romanyuk's material breach of the Content Covenant in the Agreements, Romanyuk has caused, and will continue to cause, the Companies to suffer irreparable harm and damages, which Defendants acknowledged would result upon breach of the Agreements.

WHEREFORE, the Companies respectfully request that the Court enter judgment in favor of the Companies and against Romanyuk and award to the Companies:

a.      Monetary damages, including but not limited to compensatory or actual damages, in an amount exceeding $75,000.00 and to be determined at time of trial;

b.      Pre and post-judgment interest;

c.      Reasonable attorneys' fees and costs;

d.      Equitable relief including a preliminary and/or permanent injunction prohibiting Romanyuk from, directly or indirectly, using the Companies' media content, or otherwise engaging in conduct that violates the Content Covenant in the Agreements; and

e.      Such other and further relief as this Court deems just and appropriate.

## COUNT III
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (*Plaintiffs v. Mirza Polovina and Ruckus*)

68.     The Companies repeat and reallege the allegations contained in all paragraphs 1 – 48 as if set forth at length herein.

69.     The Agreements containing the Covenants are contracts between the parties that set forth each party's rights and responsibilities to each other.

70.     Defendants Mirza Polovina, Ruckus, and Prezna, with knowledge of the Covenants agreed to by Romanyuk in the Agreements, induced or otherwise caused Romanyuk not to comply with his contractual obligations under the Covenants by:

a.      Using the Companies' media content in connection with Defendants' competing website, Funnyand;

b.      Soliciting, inducing, recruiting or hiring the Companies' contracted for media buyers to join, associate, or become employed or otherwise engaged by their competing companies, Prezna and Ruckus; and

15

c.      Otherwise inducing or causing Romanyuk to join with them in aiding, abetting, agreeing, and/or assisting them, directly or indirectly, with a competing advertising platform that uses the Companies' media content, media buyers, and trade secrets.

71.     Said conduct by Mirza Polovina, Ruckus, and Prezna was neither justified nor privileged.

72.     Said actions by Mirza Polovina, Ruckus, and Prezna are malicious and ongoing.

73.     As a result of the interference by Mirza Polovina, Ruckus, and Prezna, Romanyuk failed to comply with the Covenants, and violated same.

74.     As a direct and proximate result of the tortious interference with the Covenants by Mirza Polovina, Ruckus, and Prezna, said Defendants have caused, and will continue to cause the Companies irreparable harm and damages.

75.     By the foregoing acts, Mirza Polovina, Ruckus, and Prezna committed intentional interference with contractual relations in violation of Florida law.

WHEREFORE, the Companies respectfully request that the Court enter judgment in favor of the Companies and against Defendants Mirza Polovina, Ruckus, and Prezna and award to the Companies:

a.      Monetary damages, including but not limited to compensatory or actual damages, in an amount exceeding $75,000.00 and to be determined at time of trial;

b.      Pre and post-judgment interest;

c.      Reasonable attorneys' fees and costs;

d.      Equitable relief including a preliminary and/or permanent injunction prohibiting Defendants Mirza Polovina, Ruckus, and Prezna from interfering with or inducing Romanyuk to

breach the Covenants in the Agreements or otherwise use the Companies' media content or media buyers in violation of the Covenants; and

    e.    Such other and further relief as this Court deems just and appropriate.

## COUNT IV
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. § 501.201, *et seq.*
### (*Plaintiffs v. Defendants*)

76.    The Companies repeat and reallege the allegations contained in paragraphs 1 – 52 as if set forth at length herein.

77.    The Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") provides that unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts or practices in the conduct "of any trade or commerce" are unlawful.  Fla. Stat. § 501.204.  Under FDUTA, "trade or commerce" is defined to include any advertisement or solicitation relating to any "thing of value."  Fla. Stat. § 501.203(8).

78.    Defendants are engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8).

79.    The Companies are "interested parties" as defined by Fla. Stat. § 501.203(6).

80.    Defendants are and were competitors of the Companies in the advertising supported digital media platform space.

81.    Romanyuk and Mirza Polovina are owners and operators of Ruckus and Prezna and were acting as agents of Ruckus and Prezna and their digital platforms.

82.    Under the Agreements, Trinity acquired the Companies' media content, trade secrets, and contractual relationships with experienced media buyers, along with the Covenants designed to protect the Companies' legitimate business interests and competitive advantage in the marketplace.

83.     Defendants, through improper means, obtained use of the Companies' media content, media buyers, and trade secrets.

84.     Defendants are engaging in unfair and deceptive trade practices by using the Companies' same media content, trade secrets, and media buyers in connection with their competing websites in marketing their content and services in a manner virtually identical to the manner used by the Companies.

85.     In addition, Defendants are engaging in unfair and deceptive trade practices by using the Companies' trade secrets to exploit the Companies' most successful content for native advertising campaigns.

86.     Defendants' actions were and are unconscionable, unfair, and deceptive.

87.     Defendants' deceptive and unfair trade practices have caused the Companies to suffer damages, including but not limited to lost business and revenue.

88.     Pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, the Companies are entitled to actual damages, cots, and attorneys' fees.  In addition, the Companies are entitled to injunctive relief pursuant to Fla. Stat. § 501.211(1).

WHEREFORE, the Companies respectfully request that the Court enter judgment in favor of the Companies and against Defendants and award to the Companies:

a.     Monetary damages, including but not limited to compensatory or actual damages, in an amount exceeding $75,000.00 and to be determined at time of trial;

b.     Pre and post-judgment interest;

c.     Reasonable attorneys' fees and costs;

d.     Equitable relief including a preliminary and/or permanent injunction prohibiting Defendants from engaging in conduct that violates FDUPTA; and

e.      Such other and further relief as this Court deems just and appropriate.

**COUNT V**
**VIOLATION OF THE DEFEND TRADE SECRETS ACT**
**18 U.S.C. §§ 1831, *et seq.***
**(*Plaintiffs v. Defendants*)**

89.      The Companies repeat and reallege the allegations contained in paragraphs 1 – 48 as if set forth at length herein.

90.      Defendants Romanyuk and Mirza Polovina are the owners and operators of Ruckus and Prezna and at all times were acting as agents of Ruckus and Prezna and their digital platforms.

91.      The Companies' trade secrets constitute trade secret information pursuant to 18 U.S.C. § 1839(3), as the trade secrets derive economic value for the Companies by not being generally known to or readily ascertainable by other persons.

92.      The Companies developed the trade secrets for use in their businesses and have at all times relevant to this action taken reasonable efforts to protect the secrecy of the trade secrets.

93.      The Companies' trade secrets are related products and services used in, or intended for use in, interstate or foreign commerce.

94.      Defendants knowingly obtained the trade secrets through improper means.

95.      Defendants misappropriated the trade secrets by using the trade secrets to generate revenue for their competing websites.

96.      Defendants did not have the Companies' consent to obtain or use the trade secrets.

97.      The Companies have been damaged by Defendants' violations of the DTSA, and are entitled under the DTSA, 18 U.S.C. § 1836, to injunctive relief, enjoining further misappropriation by Defendants.

98.     Further, the Companies are entitled to recover monetary damages, including Defendants' revenue generated as a result of their DTSA violations, as well as for the Companies' actual losses.

99.     The Companies further request exemplary damages in the amount of twice the amount of actual damages awarded, as Defendants' conduct was a malicious and willful misappropriation of the trade secrets.

100.    The Companies have and continue to incur reasonable attorneys' fees and costs in bringing this action and Defendants should be required to reimburse the Companies for all reasonable attorneys' fees incurred due to Defendants' malicious and willful misappropriation of the Companies' trade secrets.

WHEREFORE, the Companies respectfully request that the Court enter judgment in favor of the Companies and against Defendants and award to the Companies:

a.      Monetary damages, including but not limited to compensatory or actual damages, in an amount exceeding $75,000.00 and to be determined at time of trial;

b.      Exemplary damages in an amount to be determined at time of trial;

c.      Pre and post-judgment interest;

d.      Reasonable attorneys' fees and costs;

e.      Equitable relief including a preliminary and/or permanent injunction prohibiting Defendants from engaging in conduct that violates FDUPTA; and

f.      Such other and further relief as this Court deems just and appropriate.

### COUNT VI – FRAUD IN THE INDUCEMENT
**(*Trinity v. Romanyuk and Mirza Polovina*)**

101.    The Companies repeat and reallege the allegations contained in paragraphs 1 – 52 as if set forth at length herein.

20

102.    To induce Trinity to enter into the Agreements, Romanyuk falsely represented in the Agreements that, among other things, Romanyuk would not use the Companies' media content for one (1) year and would not use the Companies' media buyers for three (3) years.

103.    Romanyuk and Mirza Polovina also materially induced Trinity by fraudulently omitting the fact that Romanyuk and Mirza Polovina are related to the Companies' key media buyers Oksana Romanyuk and Mahir Polovina by omitting their last names from the list of media buyers in Exhibit A to Exhibit E to the Agreements.

104.    These material representations and omissions by Defendants were materially false and intentionally false at the time made, as confirmed by Defendants' actions in using the Companies' media content and media buyers with their competing websites immediately after closing.

105.    In making their false representations and omissions, Romanyuk and Mirza Polovina intended to induce Trinity to enter into the Agreements and pay Defendants Three Million Dollars ($3,000,000.00) to purchase the Vibey and Turtle Media.

106.    Romanyuk's and Mirza Polovina's representations and omissions constituted material facts to Trinity in entering the Agreements and paying Defendants Three Million Dollars ($3,000,000.00).

107.    Trinity justifiably relied on Romanyuk's and Mirza Polovina's false representations and omissions in entering the Agreements and paying Defendants Three Million Dollars ($3,000,000.00).

108.    Had Trinity known that the individual Defendants' representations and omissions were false and fraudulent, Trinity never would have entered into the Agreements or paid Defendants the Three Million Dollars ($3,000,000.00).

109.     As a direct and proximate result of Defendants' knowingly false and fraudulent misrepresentations and omissions, and Trinity's reliance thereupon, Trinity has suffered damages.

WHEREFORE, the Companies respectfully request that the Court enter judgment in favor of Trinity and against Defendants and award to Trinity:

a.       A declaration that the Agreements between Trinity and Defendants entered into on September 23, 2022 are hereby rescinded;

b.       Restitution for all payments and other consideration given by Trinity to Defendants in exchange for the Agreements, in the form of an order directing Defendants to make payment to Trinity in an amount exceeding $75,000.00 and to be determined at time of trial;

c.       Restitution for incidental costs and losses incurred by Trinity in performing under the Agreements, in the form of an order directing Defendants to make payment in an amount exceeding $75,000.00 to be determined at trial;

d.       Punitive damages in an amount to be determined at trial;

e.       Interest and reasonable attorneys' fees and costs; and

f.       Such other and further relief as this Court deems just and appropriate.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs hereby demand a jury on all issues so triable.

Dated:        March 1, 2023                    Respectfully submitted,

                                        By: */s/ Robert K. Tucker II*
                                        Robert K Tucker II (#51641)
                                        GORDON REES SCULLY
                                        MANSUKHANI LLP
                                        100 S. Ashley Drive
                                        Tampa, FL 33602
                                        Tel.: (813) 523-4948
                                        Fax: (813) 337-3505
                                        Email: rtucker@grsm.com

Bart R. Valdes (#323380)
DSK Law Group
609 West Horatio Street
Tampa, FL 33606
Tel.: (813) 251-5825
Fax: (813) 254-1063
Email: bvaldes@dsklawgroup.com

*Attorneys for Plaintiffs,*
*Trinity Print & Media, Inc., Vibey.Com,*
*LLC, and Turtle Media Group, LLC*

## VERIFICATION

Under penalties as provided by law, the undersigned certifies that the statements set forth in the foregoing Verified Complaint are true and correct, except as to matters therein stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that he verily believes the same to be true.

Declared under penalty of perjury this 1st day of _____March_____, 2023.


_____
Gurjotpal Batra