# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

TRINITY PRINT & MEDIA, INC., A Florida corporation, VIBEY, COM, LLC, a Florida limited liability company, and TURTLE MEDIA GROUP, LLC, a Florida limited liability company.

      Plaintiffs,

v.

ROMAN ROMANYUK, an adult individual, MIRZA POLOVINA, an adult individual, RUCKUS VENTURES LLC, a Washington limited liability company, and PREZNA LLC, a Washington limited liability company,

      Defendants.
_____/

Case No. 8:23-cv-00449-MSS-JSS

## ANSWER, AFFIRMATIVE DEFENSES AND MOTION TO STRIKE DEMAND FOR JURY TRIAL

Defendants, ROMAN ROMANYUK ("Roman"), MIRZA POLOVINA ("Mirza"), RUCKUS VENTURES LLC ("Ruckus") and PREZNA LLC ("Prezna") (collectively "Defendants"), by and through their undersigned counsel, hereby file this their Answer, Affirmative Defenses and Motion to Strike Demand for Jury Trial directed to Plaintiffs', TRINITY PRINT & MEDIA, INC. ("Trinity"), VIBEY, COM, LLC ("Vibey") and TURTLE MEDIA GROUP, LLC ("Turtle") (collectively "Plaintiffs"), Verified Complaint (Doc. 1). For convenience only, Defendants will use

the same headings used by Plaintiffs in their Verified Complaint, but deny any statements contained therein. In response to the numbered paragraphs of the Verified Complaint, Defendants state:

## NATURE OF THE ACTION

1. Denied.

## PARTIES

2. Without knowledge.

3. Without knowledge.

4. Without knowledge.

5. Admitted.

6. Admitted.

7. Admitted that Ruckus is a Washington limited liability company; however, the remaining allegations are denied.

8. Admitted that Prezna is a Washington limited liability company; however, the remaining allegations are denied.

## JURISDICTION AND VENUE

9. Denied.

10. Denied.

11. Admitted that Roman executed Exhibit 1 attached to the Verified Complaint and Roman and Mirza executed Exhibit 2 attached to the Verified Complaint. Any allegations inconsistent with the terms of those Exhibits are denied.

12. Denied.

# FACTS

## Trinity's Purchase of the Companies from Defendants

13. Admitted that Roman executed Exhibit 1 attached to the Verified Complaint and Roman and Mirza executed Exhibit 2 attached to the Verified Complaint. Any allegations inconsistent with the terms of those Exhibits are denied.

14. Admitted that before September 23, 2022 Vibey and Turtle provided news and entertainment content. Without knowledge of the remaining allegations.

15. Admitted that Vibey owned and operated the website http://worldlifestyle.com ("WorldLifestyle") prior to September 23, 2022. Without knowledge of the remaining allegations.

16. Admitted that Turtle owned and operated the website http://lifebuzz.com ("LifeBuzz") prior to September 23, 2022. Without knowledge of the remaining allegations.

17. Admitted that Roman executed Exhibit 1 attached to the Verified Complaint. Any allegations inconsistent with the terms of that Exhibit are denied.

18. Admitted that Roman and Mirza executed Exhibit 2 attached to the Verified Complaint. Any allegations inconsistent with the terms of that Exhibit are denied.

19. Admitted that Roman executed Exhibit 1 attached to the Verified Complaint and Roman and Mirza executed Exhibit 2 attached to the Verified Complaint. Any allegations inconsistent with the terms of those Exhibits are denied.

20. Admitted that Roman executed Exhibit 1 attached to the Verified Complaint and Roman and Mirza executed Exhibit 2 attached to the Verified Complaint. Any allegations inconsistent with the terms of those Exhibits are denied.

21. Without knowledge.

22. Without knowledge.

## The Covenants

23. Admitted that Roman executed Exhibits 1 and 2 attached to the Verified Complaint. Any allegations inconsistent with the terms of those Exhibits are denied.

24. Admitted that Roman executed Exhibits 1 and 2 attached to the Verified Complaint. Any allegations inconsistent with the terms of those Exhibits are denied.

25. Admitted that Roman executed Exhibits 1 and 2 attached to the Verified Complaint. Any allegations inconsistent with the terms of those Exhibits are denied.

26. Admitted that Roman executed Exhibits 1 and 2 attached to the Verified Complaint. Any allegations inconsistent with the terms of those Exhibits are denied.

27. Admitted that Roman executed Exhibits 1 and 2 attached to the Verified Complaint. Any allegations inconsistent with the terms of those Exhibits are denied.

28. Admitted that Roman executed Exhibits 1 and 2 attached to the Verified Complaint. Any allegations inconsistent with the terms of those Exhibits are denied.

29. Without knowledge.

30. Admitted that Roman executed Exhibits 1 and 2 attached to the Verified Complaint. Any allegations inconsistent with the terms of those Exhibits are denied.

### Defendants' Financial Representations

31. Denied.

32. Denied.

33. Denied.

### Defendants' Breach of and Interference With the Covenants

34. Denied.

35. Denied.

36. Denied.

37. Denied.

38. Denied.

39. Denied.

40. Denied.

41. Denied.

42. Denied.

43. Denied.

44. Denied.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

### Defendants' Fate and Fraudulent Misrepresentations

49. Denied.

50. Denied.

51. Denied.

52. Denied.

53. Denied.

## COUNT I
## BREACH OF CONTRACT AS TO CONTRACTOR COVENANT
*(Plaintiffs v. Romanyuk)*

54. Roman repeats and re-alleges his answers to paragraphs 1-48 as if fully set forth herein.

55. Admitted that Roman executed Exhibits 1 and 2 attached to the Verified Complaint. Any allegations inconsistent with the terms of those Exhibits are denied.

56. Admitted that Roman executed Exhibits 1 and 2 attached to the Verified Complaint. Any allegations inconsistent with the terms of those Exhibits are denied.

57. Admitted that Roman executed Exhibits 1 and 2 attached to the Verified Complaint. Any allegations inconsistent with the terms of those Exhibits are denied.

58. Denied.

59. Denied.

60. Denied.

## COUNT II
## BREACH OF CONTRACT AS TO CONTENT COVENANT
*(Plaintiffs v. Romanyuk)*

61. Roman repeats and re-alleges his answers to paragraphs 1-48 as if fully set forth herein.

62. Admitted that Roman executed Exhibits 1 and 2 attached to the Verified Complaint. Any allegations inconsistent with the terms of those Exhibits are denied.

63. Admitted that Roman executed Exhibits 1 and 2 attached to the Verified Complaint. Any allegations inconsistent with the terms of those Exhibits are denied.

64. Without knowledge.

65. Denied.

66. Denied.

67. Denied.

**COUNT III**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**
*(Plaintiffs v. Mirza Polovina and Ruckus)*

68. Mirza and Ruckus repeat and re-allege their answers to paragraphs 1-48 as if fully set forth herein.

69. Without knowledge.

70. Denied.

71. Denied.

72. Denied.

73. Denied.

74. Denied.

75. Denied.

## COUNT IV
## VIOLATIONS OF FLORIDA DECEPTIVE AN UNFAIR TRADE PRACTICES ACT, FLA. STAT. § 501.201, *et seq.*
*(Plaintiffs v. Defendants)*

76. Defendants repeat and re-allege their answers to paragraphs 1-52 as if fully set forth herein.

77. Without knowledge.

78. Without knowledge.

79. Without knowledge.

80. Denied.

81. Denied.

82. Denied.

83. Denied.

84. Denied.

85. Denied.

86. Denied.

87. Denied.

88. Denied.

## COUNT V
## VIOLATION OF THE DEFEND TRADE SECRETS ACT
## 18 U.S.C. § 1831, *et seq.*
*(Plaintiffs v. Defendants*

89. Defendants repeat and re-allege their answers to paragraphs 1-48 as if fully set forth herein.

90. Denied.

91. Denied.

92. Denied.

93. Denied.

94. Denied.

95. Denied.

96. Denied.

97. Denied.

98. Denied.

99. Denied.

100. Denied.

## COUNT VI – FRAUD IN THE INDUCEMENT
*(Trinity v. Romanyuk and Mirza Polovina)*

101. Roman and Mirza repeat and re-allege their answers to paragraphs 1-52 as if fully set forth herein.

102. Denied.

103. Denied.

104. Denied.

105. Denied.

106. Denied.

107. Denied.

108. Denied.

109. Denied.

**GENERAL DENIAL**

Except to admit that Plaintiffs, in the unnumbered WHEREFORE paragraphs of the Verified Complaint, purport to demand judgment against Defendants for various forms of relief, Defendants deny the allegations in the unnumbered paragraphs of the Verified Complaint and deny that the Plaintiffs are entitled to any relief whatsoever. Defendants further deny each and every allegation of fact, conclusion of law or other matters set forth in the Verified Complaint that has not been expressly admitted herein.

**DEFENSES AND AFFIRMATIVE DEFENSES**

1. The Verified Complaint and each cause of action stated therein fail to state a claim upon which relief can be granted.

2. Plaintiffs fail to state a cause of action against Defendants because Plaintiffs have an adequate remedy of law.

3. To the extent that the Plaintiffs have sustained damages, which allegations are denied, those damages result from the acts or omissions of the Plaintiffs and/or third parties, who independently evaluated the services or products offered by Plaintiffs.

4. Plaintiffs' damages, if any, are limited by the applicable law, contracts and documents under, or on, which the claims are brought.

5. Without conceding that the Plaintiffs have suffered any damages as a result of any alleged wrongdoing by Defendants, Plaintiffs have failed to mitigate or minimize their alleged damages. *See the defenses set forth in Paragraphs 7-17 below.*

6. Plaintiffs' claims are barred in whole or in part by the equitable doctrines of estoppel, waiver, unclean hands, laches, avoidable consequences and/or the express language of the agreements. Moreover, Plaintiffs intentionally engaged in improper conduct directed toward Defendants, including but not limited to publishing false or misleading information about the Defendants. Plaintiffs' actions amount to bad faith and a transgression of equitable standards. *See the defenses set forth in Paragraphs 7-17 below.*

7. The Verified Complaint contains false and misleading statements by Noam Poupko ("Poupko") to deflect blame from his poor performance as Vice President of Digital Marketing for Trinity since the Sale and Purchase Agreements were executed. Poupko changed the business model of the website and ignored best practices recommended by Roman during transition which have resulted in weaker performance.

8. Poupko has a history of running businesses into the ground and has had to file personal bankruptcy. Two of his previous businesses were failures, *to wit,* Z Lifestyle LLC and Ads Direct Media, Inc.

9. Another failure was Worldlifestyle.com, which was formerly owned by Poupko. Because of Poupko's poor performance in running Worldlifestyle.com, he was forced to hire Roman as a contractor to stabilize Worldlifestyle.com. Roman was

able to stabilize Worldlifestyle.com; however, Poupko was unable to pay Roman for his services. In May 2020 Poupko suggested that Roman purchase Worldlifestyle.com. Since Roman saw little likelihood that he could collect the large balance he was owed anytime in the foreseeable future, he agreed to purchase Worldlifestyle.com from Poupko. As part of the purchase price, Poupko's debt to Roman was forgiven. Roman turned the failing business around one month after he purchased it from Poupko. Over the next two and a half years Worldlifestyle.com was profitable almost every month.

10. In 2022, Poupko called Roman out of the blue and said that he had someone who wanted to buy two of Roman's businesses. Poupko said he did not have the funds to purchase Worldlifestyle.com back for himself, but he was working with Gurjot Batra ("Gurjot") who, as an entrepreneur/investor, had sufficient funds and/or borrowing power to make the purchase. Poupko scheduled a call with Gurjot and Roman. After several calls, Gurjot began the due diligence process. On September 23, 2022, Gurjot purchased Vibey and Turtle which are Worldlifestyle.com and Lifebuzz.com. Poupko took over as the manager of Vibey and Turtle and began working with Roman during the transition. For the first several weeks, Poupko and Roman were in frequent communication. By the end of the second month, Poupko was in total control of the websites. During the transition period, Poupko exhibited sloppy, unorganized and careless behavior. Roman told him that management of the websites demanded detailed orientation to be successful. Roman suggested that Poupko needed to get an assistant or another executive because in this business details matter. During the first month, Roman helped him keep the business afloat and it was

doing fine. As soon as Roman left, however, Poupko started making big changes that hurt the bottom line. Poupko has 5 or more children and simply did not have the time or energy to run the websites properly on his own. It is a full-time job which requires the manager to be extremely detail oriented, communicating regularly with the media buying teams and giving them support to make sure everything is running smoothly — Poupko exhibited none of these qualities when Roman worked with him in 2020 or 2022.

11. Directly following the sale, Poupko was notified how to operate the websites and the things he needed to do consistently to keep the websites profitable, especially during Quarter 4 (Q4) which is the strongest quarter of the year. One task was scanning and blocking high click through (CTR) advertisers which would hurt the sites' profitability and appear more frequently in Q4. Unfortunately, Poupko ignored this crucial task and did not keep track of these bad advertisers. For the first month after the sale, Roman helped and blocked these advertisers. He also provided Poupko with video guides on how to complete the task. Notwithstanding that assistance, bad advertisers continued showing up on the site well into December which hurt the site's profitability. Poupko was told multiple times to scan and block these advertisers weekly, but he ignored Roman's recommendations.

12. In November 2022, Poupko started buying significant traffic to an infinite scroll layout and grew it to over 70% of the traffic on the website. This effectively changed the business model of the site as the Defendants strictly ran a Paginated Layout which was the entirety of their success with the website. A Paginated Layout

entails showing a navigation button at the bottom of each slide which directs the reader to the next page of the article. Paginated Layouts result in higher revenue per session (RPS) and in turn higher advertising rates. An Infinite Scroll Layout entails a content structure that allows the user to scroll infinitely through the article without having to click on a navigation button. Infinite Scroll Layouts have a lower RPS because of lower advertising rates. The website was running solely a Paginated Layout which resulted in higher advertising rates. When Poupko introduced an Infinite Scroll Layout, the advertising rates on the Paginated Layout fell dramatically. All of this was explained to Poupko by Defendants multiple times, but he continued running an Infinite Scroll Layout. This made all previous advertising campaigns that transferred to the Plaintiffs unprofitable and all media buying efforts unsuccessful.

13. Poupko also started buying significant traffic from Geos/Countries. Defendants purchased the majority of United States traffic, while now Poupko has been buying Canadian, United Kingdom and Australian traffic among others — all of which pay much lower advertising rates than U.S. traffic.

14. During the transition, Poupko did not follow company protocol when adding new media buying teams or new advertising accounts for existing media buyers. Poupko was made aware that if he adds additional media buying team members or creates new advertising accounts, he should document that in the company Google Docs files and notify Vadym Lykinskyi who is in charge of data entry.

15. On Jan 24, 2022, Poupko switched the content management system (CMS) without notifying anyone on the media buying and campaign creations team. The Worldlifestyle.com website was down for the day causing thousands of dollars in losses. This could have been completely avoided by communicating with the media buying teams, which would have paused campaigns while they made the switch.

16. Since the sale there has been no activity on Lifebuzz.com. The wise thing would have been to test all of these changes on Lifebuzz.com and not Worldlifestyle.com which was running profitably before all of Poupko's changes post-sale. Plaintiffs did not reach out to Roman or Mirza with any questions related to the websites. They let Poupko control everything. This has proven to be the main reason behind the decline of the site.

17. Plaintiffs were fully aware Defendants owned competing websites such as http://funnyand.com and others. Based on the forgoing, **no non-compete clauses** were ever contemplated or included in any of the Agreements. Plaintiffs fully understood that the Defendants would remain in competing businesses and proceeded forward with that understanding.

18. No act of Defendants either proximately caused or contributed to any injury or alleged damages suffered by Plaintiffs. *See the defenses set forth in Paragraphs 7-17 above.*

19. In consideration of the totality of the circumstances, any injunction would be an unfair restraint on trade and is not necessary to enforce the parties' agreements. *See the defenses set forth in Paragraphs 7-17 above.*

20. The claims for misappropriation and/or conversion of trade secrets and/or proprietary information are barred, in whole or in part, because Plaintiffs did not take reasonable steps to protect the secrecy of their information.

21. The claims for misappropriation and/or conversion of trade secrets and/or proprietary information are barred, in whole or in part, because Plaintiffs abandoned their trade secrets.

22. The claims for misappropriation and/or conversion of trade secrets and/or proprietary information are barred, in whole or in part, because Plaintiffs' information was readily ascertainable and not secret.

23. The claims for misappropriation and/or conversion of trade secrets and/or proprietary information are barred, in whole or in part, because Plaintiffs' trade secrets and/or proprietary information, if any, were released to the public domain.

24. The claims for misappropriation and/or conversion of trade secrets and/or proprietary information are barred, in whole or in part, because Plaintiffs' trade secrets and/or proprietary information, if any, lacked economic value.

25. The claims for misappropriation and/or conversion of trade secrets and/or proprietary information are barred, in whole or in part, because Plaintiffs' trade secrets, if any, were not exclusive to Plaintiffs.

26. The claims for misappropriation and/or conversion of trade secrets and/or proprietary information are barred, in whole or in part, because Plaintiffs failed to identify their trade secrets with reasonable particularity.

27. To the extent that Plaintiffs own any valid trade secrets, such trade secrets have not been used by any of the Defendants.

28. The claims for breach of contract are barred, in whole, or in part, because Plaintiffs have not adequately performed all of their obligations under the contracts.

## RESERVATION OF RIGHTS

Defendants hereby give notice that they intend to rely on such other defenses and affirmative defensives as may become available or apparent during the course of discovery and, thus, reserve the right to add additional defenses and affirmative defenses as this case proceeds.

WHEREFORE, having fully responded to Plaintiffs' Verified Complaint, Defendants respectfully request the Court dismiss Plaintiffs' claims with prejudice, award Defendants their costs and reasonable attorneys' fees incurred in this lawsuit, and allow Defendants such other and further relief as the Court deems proper.

## MOTION TO STRIKE CLAIM FOR JURY TRIAL

Plaintiffs have demanded a jury trial in this matter; however, the agreement which forms the basis of the action provides as follows:

> 32. WAIVER OF JURY TRIAL. TO THE FULLEST EXTENT PERMITTED BY LAW, THE PARTIES HERETO WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY ACTION BROUGHT UNDER OR IN ANY WAY RELATED TO THIS AGREEMENT. EACH PARTY'S WAIVER IS A MATERIAL INDUCEMENT TO THE OTHER PARTY TO ENTER INTO THIS AGREEMENT.

Based on the foregoing, Plaintiffs' demand for a jury trial should be stricken.

Dated: March 27, 2023

*/s/ Robert E. Johnson*
Robert E. Johnson, Esq., Lead Counsel
Florida Bar No.: 342955
Michael J. Colitz, III, Esq.
Florida Bar No. 164348
Emily M. Heim, Esq.
Florida Bar No. 1015867
GrayRobinson, P.A.
401 East Jackson Street, Suite 2700
Tampa, FL 33602
Telephone: (813) 273-5000
Facsimile: (813) 273-5145
Primary Email:
robert.johnson@gray-robinson.com
Secondary Email:
deborah.cook@gray-robinson.com
*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of March, 2023, a true and correct copy of the foregoing has been filed with the Clerk of the Court and furnished via CM/ECF to:

Robert K. Tucker II
Gordon Rees Scully Mansukhani LLP
100 S. Ashley Drive
Tampa, FL 33602
rtucker@grsm.com

Bart R. Valdes
DSK Law Group
609 West Horatio Street
Tampa, FL 33606
bvaldes@dsklawgroup.com

            */s/ Robert E. Johnson*

#49870469 v1